IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ANNIE TERRELL,          *
                       *
    Plaintiff,      *    CIVIL ACTION NO. 13-00357-B
                       *
vs.                  *
                       *
CAROLYN W. COLVIN,     *
Commissioner of Social Security,*
                       *
    Defendant.      *

<u>ORDER</u>

Plaintiff Annie Terrell (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* On November 12, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.    <u>Procedural History</u>

Plaintiff protectively filed an application for

supplemental security income on July 29, 2010.  (Tr. 155). Plaintiff alleged that she had been disabled since July 29, 2010, due to nerve problems (anxiety and panic disorder), arthritis, and high blood pressure.  (Id. at 155, 159). Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Thomas M. Muth II (hereinafter "ALJ") on September 21, 2011.  (Id. at 43).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 44).  A medical expert and a vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 55, 58).

On November 25, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 36). On May 18, 2012, and June 4, 2012, Plaintiff submitted additional medical evidence to the Appeals Council.  The Appeals Council considered said evidence before denying review on May 25, 2013.  (Id. at 1-2, 5, 8, 514).  Thus, the ALJ's decision dated November 25, 2011 became the final decision of the Commissioner.  Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties waived oral argument (Doc. 19) and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

2

## II. <u>Issues on Appeal</u>

    A.    **Whether the ALJ erred in failing to fully develop the evidence related to Plaintiff's mental retardation claim?**

    B.    **Whether the ALJ erred in failing to properly consider all the Plaintiff's impairments in posing a hypothetical to the Vocational Expert?**

    C.    **Whether the Appeals Council erred in failing to adequately examine the additional evidence submitted by Plaintiff?**

## III. <u>Factual Background</u>

Plaintiff was born on March 23, 1966, and was forty-five years of age at the time of her administrative hearing on September 21, 2011. (Tr. 43, 45). Plaintiff testified that she completed the twelfth grade in high school, and that she was assigned special education classes. Plaintiff did not graduate from high school because she could not pass the Alabama Graduation Exam. She did not obtain her GED. (<u>Id.</u> at 45, 51).

Plaintiff testified that she last worked as a babysitter from 2006 to 2009 and that she also worked for Alabama Catfish in 2000 and 2002 as a packer and on the filet line. (<u>Id.</u> at 45-46). She testified that she can no longer work because she has

a "nerve problem and back problems."[1]  (Id. at 47).

Plaintiff reported that she lives with her four children, ages 23, 19, 17, and 12.  (Id. at 49).  She handles her own finances and banking and can count change; she cooks, performs housekeeping duties (cleaning, laundry, and ironing) and grocery shops, with some assistance from her daughter.  (Id. at 49, 167-68).  In her Function Report, Plaintiff stated that she is able to finish what she starts; she follows written instructions "well;" she follows spoken instructions "well;" and she gets along with authority figures "well."  (Id. at 170-71).

Plaintiff testified that her average day begins around 6:30 a.m. when she wakes her son for school and begins her housework.  (Id. at 50).  She frequently rests and watches television.  (Id.).  Plaintiff testified that she does not go out of the house often because of her nerves, although she does go to church on a regular basis.  She stated that she has crying spells about twice a week.  (Id. at 53-54, 169).  Plaintiff has never had a driver's license and has never learned to drive because of problems with her nerves.  (Id. at 52).

Plaintiff listed her medications as Citalopram (for

---

[1] Plaintiff stated that she had to stop babysitting in 2009 because it "was getting on [her] nerves." (Tr. 47). Plaintiff also testified that she has arthritis in her lower back, which causes her pain every day. (Id. at 47). She takes Naproxen and Ultram for pain, which helps "a little bit." (Id. at 48).

anxiety), Diclofenac (for arthritis), Hyzan (for high blood pressure and fluid retention), and Propranolol (for high blood pressure). (Tr. 162). She has no side effects from her medications. (Id.).

IV.  **Analysis**

    A.  **Standard of Review**

    In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial

_____

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.    Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[3] 20 C.F.R.

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 29, 2010, the alleged onset date, and that she has the severe impairments of degenerative joint disease of the lumbar spine, carpal tunnel syndrome, osteoarthritis, obesity, anxiety disorder, panic disorder, and right knee and right shoulder pain of uncertain etiology. (Tr. 27). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work, "except [that] she can frequently lift and/or carry 10 pounds

---

examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

and occasionally lift and/or carry 20 pounds[;] [s]he can frequently use her right upper extremity for pushing and/or pulling; she can occasionally use her left upper extremity for pushing and/or pulling; she can use her right lower extremity for occasional pushing and/or pulling; and she can use her left lower extremity for frequent pushing and/or pulling[;] [she] can frequently balance, occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl, and occasionally climb ramps and stairs[;] [she] cannot climb ladders, ropes, or scaffolds[;] [s]he can frequently reach, bilaterally[;] [s]he can frequently handle with the right hand, occasionally handle with the left hand, perform unlimited fingering with the right hand and perform frequent fingering with the left hand[;] [s]he can perform unlimited feeling[;] [s]he is limited to work that requires no more than occasional exposure to extreme heat and occasional exposure to extreme cold, and that avoids all exposure to unprotected heights and dangerous machinery[;] [she] can perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with infrequent and gradually introduced work place changes; she can occasionally interact with the public and occasionally interact with supervisors[;] [and] [s]he should be exposed to only a small number of familiar coworkers but she can sustain concentration and attention for two-hour periods with customary

8

breaks." (Id. at 30-31). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent that they were inconsistent with the RFC. (Id. at 31).

Given Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform her past work as a day care worker/babysitter or hand packer. (Id. at 34). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are other jobs existing in the national economy that Plaintiff is able to perform, such as "cleaner," "machine tender," and "assembler," all of which are classified as light and unskilled. (Id. at 35, 63). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

In determining that Plaintiff did not meet any Listing, the ALJ made the following relevant findings:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. . . .
>
> In activities of daily living, the claimant has mild restriction. The claimant initially

reported that she attends to her personal needs independently, enjoys watching television programs for two hours at a time, prepares her own and, twice weekly, family meals, regularly shops for groceries, clothing, and other personal and family needs, and leaves her home independently. The claimant testified at her hearing in September 2011 to providing a single-parent home for her four children and performing some household chores. Treatment records from Cahaba Center for Mental Health show that the claimant socializes with family members, participates in holidays, and maintains a household with three minor children and one adult child. See Exhibits 4E; 11F; Hearing Testimony.

In social functioning, the claimant has moderate difficulties. The claimant reported that despite getting "nervous" around "too many" people, she continues to shop in public stores on a regular basis, requiring only occasional help from her daughter. Treatment records from Cahaba Center for Mental Health show that in May 2010, the claimant reported improvement with compliance to her medication regimen and only experiencing "anxiety" when she was upset. In June 2010, the claimant reported experiencing only occasional panic attacks and said they were occurring "less often." She reported in August 2010 that she left her home almost every day riding in a car with someone else. She said she attended church and needed no reminders or someone to accompany her. She said she had no problems getting along with family, friends, or neighbors and provided no information regarding changes in her social activities since our condition began. See Exhibits 4E; 11F, Hearing Testimony.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant initially indicated that her condition did not affect

her memory or ability to complete tasks, concentrate, understand, or follow instructions (Exhibit 4E page 6). Nevertheless, she testified to problems in this area when she became nervous. She said she was not able to pass the "exit exam" from high school, which prevented her from graduating with her class, or successfully learn to drive a car even with taking a driver's education course. Linda Duke, Ph.D., consulting medical expert with the Alabama Disability Determination Service opined in September 2010 that the claimant was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods (Exhibit 16F). The claimant reported that she had no problems managing the financial affairs of her family as well as that there has been no change in her ability to handle money since her condition began (Exhibit 4E).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The claimant has required neither inpatient hospital treatment nor ongoing and/or intensive mental health counseling or other treatment modalities.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(Tr. 29-30).[4]   Further, in assessing Plaintiff's RFC, the ALJ

---

[4] The ALJ further found that the "paragraph C" criteria were not met, noting that "[t]he claimant testified that she grocery shops for her family, regularly shops in stores, and babysits outside of her own home for a friend.   In August 2010, the claimant reported that she leaves her house almost every day

made the following relevant findings:

> The claimant initially alleged her ability to perform work activity on a sustained basis was limited because of a "nerve problem" "arthritis," and "high blood pressure." She said that, while her condition did not cause her to make changes in her work activity, she stopped working on July 29, 2010 because of her condition(s). . . . .
>
> Treatment records from Cahaba Center for Mental Health show that the claimant carries the diagnoses of panic disorder and generalized anxiety disorder features (Exhibit 11 F). These records further show that the claimant reported improvement with compliance to an appropriate medication regimen. There is no indication of adverse medication side effects and Timothy S. Baltz, M.D., the claimant's psychiatrist, offered no opinion regarding functional restrictions.
>
> As for the opinion evidence, . . . [t]he mental RFC as expressed in the assessment by Dr. Duke is consistent with the other credible medical evidence of record and, therefore, merits significant weight. See Exhibit 16F.
>
> The opinion expressed in the PRT form by Dr. Duke is consistent with the other credible medical evidence of record and, therefore, also merits significant weight. See Exhibit 12F.
>
> The opinion of Dr. Robidoux concerning the claimant's limitations as expressed in his examination narrative report, which is identified as Exhibit 13F, is consistent with the described examination findings and

---

riding in a car and that she is able to leave her home without having anyone to accompany her." (Tr. 30).

other treatment evidence. Therefore, significant weight is assigned to this opinion, as well.

Although the claimant has described restricted daily activities, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities were truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other volitional reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. . . .

In sum, the above residual functional capacity assessment is supported by opinion evidence, the claimant's reported daily activities, radiographic evidence, the conservative nature of treatment offered, the claimant's favorable response to conservative treatment measures, and the lack of functional restrictions by any treating and/or examining medical source.

(Tr. 30-34).

Following the ALJ's determination on November 25, 2011, that Plaintiff was not disabled, Plaintiff submitted additional evidence to the Appeals Council consisting of medical records from Bryan Whitfield Memorial Hospital dated April 12, 2012, through April 20, 2012, related to treatment for her right knee and medical records from the Holifield Clinic dated January 14, 2003, through November 8, 2011, documenting telephone encounters between Plaintiff and staff at the Holifield Clinic. (Id. at

13

9-15, 514-18).   The Appeals Council found that the additional evidence did not affect the decision about whether Plaintiff was disabled on or before November 25, 2011, and denied review. (Id. at 2).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### 1.  Issues

#### a. Whether the ALJ erred in failing to fully develop the evidence related to Plaintiff's mental retardation claim?

Plaintiff argues that the ALJ erred in failing to consider her mental retardation in determining whether she is disabled and that he erred in failing to fully develop the evidence related to this alleged impairment because he did not order a consultative mental examination and I.Q. testing.  (Doc. 13 at 2-7).   Plaintiff maintains that there was evidence before the ALJ indicating that she is mentally retarded, such as: evidence that she was in special education classes in school; a report dated April 3, 2006, from psychologist Dr. Richard S. Reynolds, Ph.D., a consultative examiner in Plaintiff's previous application for benefits, who noted that Plaintiff had "mental retardation per history" (id. at 2; Tr. 322-24); and the testimony of Dr. Calvin R. Johns, M.D., the medical expert at Plaintiff's hearing, that Plaintiff "has some psychiatric

disorders, anxiety, mental retardation, [and] panic attacks. . .
."  (Tr. 56).   Plaintiff argues that because of the ALJ's
failure to consider her mental retardation and failure to order
a consultative mental examination and I.Q. testing to determine
the degree of her mental retardation impairment, his decision is
not supported by substantial evidence.  (Doc. 13 at 4-7).

The Commissioner counters that the ALJ properly declined to
consider Plaintiff's alleged mental retardation impairment
because Plaintiff never alleged before the ALJ that she was
disabled as a result of mental retardation[5] and because, in any
event, there is insufficient evidence to establish that mental
retardation was a medically determinable impairment in this
case.  (Doc. 17 at 6, 8).  The Commissioner further counters
that Dr. Reynolds' notation in his report that Plaintiff had
"mental retardation per history" is not a diagnosis but, rather,
is merely a recitation of Plaintiff's reported history, as
evidenced by Dr. Reynolds' opinion that Plaintiff's mental
status is normal and intact and that she is employable.  (Id. at
7).  Likewise, the Commissioner maintains that Dr. Johns'
statement at the hearing that Plaintiff's impairments included

---

[5] It appears that Plaintiff asserted mental retardation as a
basis for her disability claim for the first time before the
Appeals Council.  (Tr. 18-19).  However, Plaintiff did not
submit any additional evidence related to this alleged
impairment.

mental retardation was merely a reference to Dr. Reynolds' reported history, as there is no diagnosis of mental retardation or even a suggestion of mental retardation anywhere else in the record. (Id. at 8). Having carefully reviewed the record in this case, the Court finds no error with regard to this claim.

As a preliminary matter, the Court notes that the Commissioner is correct that Plaintiff, who was represented by an attorney, did not allege in her application that she is impaired as a result of mental retardation, nor did she assert before the ALJ that she is impaired as a result of mental retardation. In her application, Plaintiff stated that she is disabled as a result of a nerve problem, arthritis, and high blood pressure. (Id. at 159). At her hearing, Plaintiff testified that she cannot work because of nerve and back problems. (Id. at 47). After Dr. Johns, the medical expert at the hearing, listed mental retardation as one of Plaintiff's psychological disorders (along with anxiety and panic attacks), Plaintiff's attorney asked him generally about whether he had an opinion about Plaintiff's limitations based on her physical and mental impairments, and Dr. Johns declined to offer any opinion related to her mental impairments. (Id. at 57, 130-31). Despite Dr. Johns' reference to "mental retardation," neither Plaintiff nor her attorney asserted that she was mentally retarded or that she was basing her claim for disability on

16

mental retardation.  Consequently, it is not surprising that the ALJ's opinion is silent on the subject of mental retardation.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial.  A claimant bears the burden of proving disability and of producing evidence in support of her claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).  This duty to develop the record exists whether or not the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).

42 U.S.C. 421(h) provides that "in any case where there is evidence which indicates the existence of a mental impairment," a determination that a claimant is not disabled "shall be made only if the Commissioner . . . has made every reasonable effort to ensure that a qualified psychiatrist or psychologist" has offered an opinion or reviewed the record.  Id.  Likewise, in McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988), the Eleventh Circuit stated that where there is evidence indicating the existence of a mental impairment, the Commissioner may determine that the claimant is not under a disability only if the Commissioner has made "every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." Id.

(quoting 42 U.S.C. § 421(h) (internal quotation marks omitted). Later, in Sneed v. Barnhart, 214 F. Appx. 883, 886 (11th Cir. 2006) (unpublished), a panel of the Eleventh Circuit stated that "McCall interprets § 421(h) [to] require[] an ALJ to order a psychological consultation where there is evidence of a mental impairment." Id.

However, the ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision."). Furthermore, "an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Street v. Barnhart, 133 Fed. Appx. 621, 627 (11th Cir. 2005).

In this case, Plaintiff's claim fails for several reasons. First, as stated, Plaintiff did not allege in her application or at the hearing that she is disabled as a result of mental

retardation.   Thus,  the  ALJ  was  under  no  obligation  to investigate that alleged impairment.  See Street, 133 Fed. Appx. at  627  (11th  Cir.  2005)  ("Street  did  not  list  any  mental impairment or intellectual functioning issues in his application for  SSI  benefits,  nor  did  he  testify  at  his  hearing  that  he suffered from any intellectual or mental impairments that would prevent him from working.  This failure alone could dispose of his  claim,  as  it  has  been  persuasively  held  that  an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and  not  offered  at  the  hearing  as  a  basis  for  disability.") (citations  and  internal  quotation  marks  omitted);  see  also  20 C.F.R.  §  416.912(c)  (the  burden  is  on  the  claimant  to  provide medical  evidence  showing  that  he  or  she  has  an  impairment  and showing how severe the impairment is during the time of alleged disability).

Moreover,  even  if  Plaintiff  had  alleged  mental  retardation in  her  application  or  at  the  hearing,  there  is  no  medical evidence  supporting  a  finding  of  mental  retardation  in  this case.   Thus,  the  ALJ  had  no  duty  to  develop  the  record  with regard  to  this  alleged  impairment.   In  order  to  be  considered for the purposes of disability, an impairment "must result from anatomical,  physiological,  or  psychological  abnormalities  which can  be  shown  by  medically  acceptable  clinical  and  laboratory

diagnostic techniques." 20 C.F.R. § 416.908. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." Id.

While it is undisputed that Plaintiff was in special education classes in school, that she had failing or near failing grades in most subjects throughout high school, that she failed the math, language, and reading portions of the Alabama High School Graduation Exam, and that Dr. Reynolds noted in his consultative report dated April 3, 2006, that Plaintiff had "mental retardation per history"[6] (id. at 151-52, 322), no where in the record is there a diagnosis of mental retardation, nor is there medical evidence of any kind indicating that Plaintiff actually suffers from mental retardation.  Indeed, as discussed further herein, not even Plaintiff's treating psychiatrist, Dr. Timothy Baltz, M.D., ever diagnosed her with mental retardation, nor did Dr. Baltz ever indicate the possibility that Plaintiff suffers from mental retardation.  (Id. at 441-55).

Given the fact that Plaintiff did not allege mental retardation in her application or at the hearing and given the

_____

[6] Dr. Reynolds conducted a consultative examination of Plaintiff in April 2006 in connection with a prior application for disability.  Dr. Reynolds' single statement noting "mental retardation by history" is the only reference to this condition anywhere in the Plaintiff's medical records.

dearth of evidence indicating the existence of mental retardation, the ALJ had no obligation to consider this impairment or to order a consultative mental examination under 42 U.S.C. 421(h) to develop the record with regard to this alleged impairment.[7] See Robinson v. Astrue, 2009 WL 700414, *5 (M.D. Ga. Mar. 13, 2009) aff'd, 365 Fed. Appx. 993 (11th Cir. 2010) ("As the Regulations state, the burden of proving that [a claimant] is disabled is on the Claimant. . . . That means that [i]n an action seeking disability benefits, the burden is upon the claimant to demonstrate existence of a disability as defined by the Social Security Act. . . . It is, therefore, not the responsibility of the ALJ to analyze each and every impairment listed by the claimant in her medical records to determine if that impairment causes or contributes to a claimant's inability to work. It is the sole responsibility of the claimant to do so. To require that the ALJ address every impairment mentioned in a claimant's medical records to determine its severity would remove the burden from the Claimant and place it squarely on the

---

[7] With respect to Plaintiff's claim that the ALJ erred in failing to order I.Q. testing, Plaintiff is correct that standardized intelligence tests are required in order determine whether a claimant meets certain mental retardation listings, such as Listing 12.05C. See 20 C.F.R., Pt. 404, subpt. P, App. 1, § 12.00D(6)(b). However, no such testing was required in this case because the record simply does not contain any credible evidence of mental retardation that met the threshold criteria of being a medically determinable impairment under the regulations.

shoulders of the Commissioner.") (citations and internal quotation marks omitted).

In addition, even if Plaintiff's alleged mental retardation was a medically determinable impairment in this case, the record contains the 2006 consultative report of Dr. Richard Reynolds, Ph.D., in which he found that, despite Plaintiff's purported "mental retardation per history," her mental status was essentially normal and intact, and she was employable.  Dr. Reynolds noted in his report that Plaintiff had been in special education classes in school, and he indicated that her school records should be used to assist in determining her cognitive function.  (Id. at 322-24).  Notwithstanding, upon examining Plaintiff, he concluded that her mental status was essentially normal, with the exception that her mood was "nervous."  (Id. at 323).  He found that her "[t]hought associations were tight;" her "[t]hought content was logical;" her "affect was appropriate to content of thought and conversation;" and her "[j]udgment, insight, and decision-making abilities appear intact for level of intellectual functioning."  (Id.).  He concluded: "In this evaluator's opinion the claimant's ability to understand, carryout, to remember instructions, and to respond appropriately to supervision, co workers, [and] work pressures in a work setting is intact.  Ms. Terrell reports some symptoms of anxiety, but appears employable." (Id. at 324).

In addition to Dr. Reynolds' opinions, the record contains the treatment notes of Plaintiff's treating psychiatrist, Dr. Baltz, who treated Plaintiff from April 2008 to June 2010 for panic disorder and anxiety. Dr. Baltz's treatment notes document that Plaintiff did not graduate from high school because she was unable to pass the exit examination and that she quit her job because of anxiety. (Id. at 444, 447). Dr. Baltz's treatment notes further reflect that Plaintiff was a single mom, with four children at home, and a limited income, and that she suffered from panic disorder and anxiety.[8] (Id. at 444-50). Nowhere in Dr. Baltz's treatment notes is there any reference to mental retardation, nor is there any indication that Plaintiff's panic disorder and anxiety were disabling in nature. (Id. at 441-55). Dr. Baltz treated Plaintiff's panic

---

[8] Dr. Baltz regularly assigned Plaintiff a GAF of 60. (Tr. 446-54). GAF (Global Assessment of Functioning) is a numeric scale (0 through 100) used by mental health clinicians that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious social dysfunction (e.g., no friends, unable to keep a job). A GAF score of 51-60 suggests moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61-70 is indicative of mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. See http://www.gafscore. com.

disorder and anxiety with medication,[9] and his treatment notes consistently reflect improvement in Plaintiff's condition. (Id.).

In addition to evidence provided by Dr. Reynolds and Dr. Baltz, the record contains the Mental RFC assessment and Psychiatric Review Technique form completed by State Agency reviewer, Dr. Linda Duke, Ph.D.  On September 8, 2010, Dr. Duke completed the Psychiatric Review Technique form and opined that Plaintiff had only "mild" restrictions in activities of daily living, "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Id. at 466).  In her Mental RFC assessment, Dr. Duke likewise indicated no more than "moderate" limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to complete a normal work day and work week without interruptions from psychologically based symptoms, ability to perform at a consistent pace, ability to interact appropriately with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to respond appropriately to changes in the work setting.  (Id.

---

[9] Plaintiff reported no side effects from her medications.  (Tr. 446-54).

at 477-78).  Dr. Duke opined that Plaintiff has the ability to understand, remember, and carry out short and simple instructions and that she can attend and concentrate for two hour periods.[10]   (Id. at 479).

The Eleventh Circuit has held that an ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart,  275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).   "The ALJ may rely on opinions of non-

---

[10] The record also contains a Psychiatric Review Technique and Mental RFC assessment forms completed by State Agency psychologist Dr. Larry Dennis, Ph.D. on June 26, 2008. (Tr. 421-37).   Although the ALJ did not rely on Dr. Dennis' assessments, which were completed in connection with Plaintiff's prior application for benefits, Plaintiff argues in her brief that the ALJ should have relied on Dr. Dennis' statement that she could work for only "two hours over [an] eight hour day" (id. at 437) and that the ALJ should have interpreted that statement to mean that she could only work for a *total* of two hours in an eight hour work day.   Having reviewed Dr. Dennis' assessments at length, the Court finds that the reasonable interpretation of Dr. Dennis' statement is that Plaintiff could work for two hour *intervals* in an eight hour work day.   This interpretation is consistent with Dr. Dennis' overall findings and conclusions, as well as the remaining record evidence in this case.   (Id. at 437). Moreover, Plaintiff's interpretation of Dr. Dennis' opinion is inconsistent with the findings of her examining sources, Dr. Reynolds and Dr. Baltz, and thus could not be relied upon by the ALJ in any event.   See Milner v. Barnhart,   275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) ("The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.").

examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)). In this case, the opinions of Dr. Duke do not conflict with the opinions of any examining sources. Thus, the ALJ properly afforded those opinions significant weight. (Tr. 33). Based on the evidence discussed above, the ALJ complied with his duty under 42 U.S.C. § 421(h) to make "every reasonable effort to ensure that a qualified psychiatrist or psychologist," offered an opinion on all of Plaintiff's mental impairments (including her alleged mental retardation) or reviewed the record related to all of her mental impairments before determining that Plaintiff was not disabled.

Having reviewed the record at length, the undersigned further finds that the ALJ's mental RFC assessment in this case is supported by substantial evidence. In addition to the evidence discussed above, Plaintiff testified at her hearing and stated in her Disability Report that she worked for a fish processing factory as a packer and on the filet line in 2000 and 2002 until she quit because of nerve problems, arthritis, and high blood pressure. (Id. at 45-47, 159). In addition, she reported that she can read, write, pay bills, count change, handle a savings account, and use a check book; she cooks, performs housekeeping (cleaning, laundry, and ironing) and shops for groceries with assistance from her daughter. (Id. at 49,

26

158, 167-68).  She also reported that she is able to finish what she starts; she follows written instructions "well;" she follows spoken instructions "well;" and she gets along with authority figures "well."  (Id. at 170-71).  This evidence, along with the opinion evidence discussed above, supports the ALJ's mental RFC assessment that Plaintiff can perform a range of light work limited to "simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with infrequent and gradually introduced work place changes;" occasional interaction with the public and occasional interaction with supervisors; exposure to only a small number of familiar coworkers; and requiring her only to sustain concentration and attention for two-hour periods with customary breaks.  (Id. at 31).

In sum, the ALJ's decision reflects that he had before him sufficient evidence upon which to make his RFC determination, that he thoroughly examined all of the record evidence, and that his determination that Plaintiff can perform a range of light work, with the stated restrictions, is supported by substantial evidence.  Indeed, there is no evidence suggesting limitations in excess of those in the RFC.  Accordingly, Plaintiff's claims that the ALJ erred in failing to fully develop the evidence related to her alleged mental retardation impairment and that

the ALJ's RFC assessment is not supported by substantial evidence are without merit.

> **b. Whether the ALJ erred in failing to properly consider all of Plaintiff's impairments in posing a hypothetical to the Vocational Expert?**

Plaintiff argues that the vocational expert's testimony is not supported by substantial evidence because the ALJ's hypothetical question did not account for all of her impairments, namely, mental retardation. (Doc. 13 at 7). The Commissioner counters that the ALJ was not required to include any limitations in his hypothetical question that were not supported by the record, such as her alleged mental retardation. (Doc. 17 at 11).

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Moreno v. Astrue, 366 Fed. Appx. 23, 29 (11th Cir. 2010) (citing Vega v. Commissioner of Soc. Sec., 265 F.3d 1214, 1220 (11th Cir. 2001). "However, the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." Id. (citations omitted) ("The ALJ did not err by failing to include [the claimant's] subjective symptoms in his hypothetical to the VE because the ALJ was not required to include limitations that it found to be unsupported."); see also Stremba v. Barnhart, 171

Fed. Appx. 936, 939 (3d Cir. 2006) ("'all impairments' means
only those that are medically established. . . . Limitations
that are medically supported but are also contradicted by other
evidence in the record may or may not be found credible. . . .
Of course, credibility determinations are to be made by the
ALJ.") (citing 20 CFR § 404.1527) (citations and internal
quotation marks omitted).

Having already determined, for the reasons set forth above
with respect to Issue One, that a finding of mental retardation
is unsupported by the record in this case, and to the contrary,
that Plaintiff's claim of mental retardation is contradicted by
other credible evidence in the record, the ALJ did not err in
failing to pose a hypothetical to the VE which included such
limitations.[11]  Therefore, Plaintiff's claim is without merit.

**c. Whether the Appeals Council erred in
failing to adequately examine the**

---

[11] The Court further notes, as the Eleventh Circuit noted in
Street, 133 Fed. Appx. at 627-28, that this alleged error, *i.e.,*
posing an inadequate hypothetical question to the VE, could
easily have been corrected at the hearing if Plaintiff or her
attorney had put the ALJ on notice of the deficiency, if indeed
one existed based on the record evidence. As in Street,
Plaintiff failed to do that and now seeks to have this Court
reverse and remand despite the fact that, whatever the evidence
of Plaintiff's alleged mental retardation, that evidence existed
at the time of the hearing.  As discussed above, Plaintiff
failed to present sufficient evidence to the ALJ that would have
put him on notice of this alleged mental limitation on her
ability to function.  Therefore, the ALJ's question properly
cited the limitations that Plaintiff faced based on the record
evidence and the testimony at her hearing.

29

**additional evidence submitted by Plaintiff?**

Last, Plaintiff argues that the Appeals Council failed to adequately examine the additional evidence that she submitted after the ALJ issued his decision on November 25, 2011. (Doc. 13 at 8). Plaintiff argues that the new evidence, namely, an MRI of her right knee taken on April 20, 2012, is not cumulative and should have been considered by the Appeals Council because it explains the origin of her right knee pain, which the ALJ found to be of "uncertain etiology." (Tr. 27; Doc. 13 at 9-11). According to Plaintiff, the MRI "may well have persuaded the ALJ in this case to reverse his decision."[12] (Doc. 13 at 10; Tr. 8-16).

The Commissioner counters that the new evidence related to the April 20, 2012, MRI of Plaintiff's right knee is immaterial and was properly rejected by the Appeals Council because it does not relate to the period in question.[13] (Doc. 17 at 12). The Commissioner further argues that the new evidence, in any event,

---

[12] As stated above, the record also shows that Plaintiff submitted records to the Appeals Council from the Holifield Clinic dated January 14, 2003, through November 8, 2011, which appear to document telephone conversations with Plaintiff regarding prescription refills, treatment plans, etc. (Tr. 515-18). Plaintiff makes no argument related to these records.

[13] The Appeals Council found that the new evidence related to a time period after the ALJ had decided the case and, thus, did not affect the ALJ's decision about whether Plaintiff was disabled during the period in question. (Tr. 2).

does not undermine the ALJ's finding of no disability.  Having carefully reviewed the record in this case, the Court agrees that the Appeals Council did not err in finding that Plaintiff's new evidence, namely, the April 20, 2012, MRI of Plaintiff's right knee, did not provide a basis for changing the ALJ's decision.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of [the] administrative process." Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Id. (quoting 20 C.F.R. § 404.970(b)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Id. at 1262. Evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." Caulder v. Bowen, 791 F. 2d 872, 877 (11th Cir. 1986).

In this case, Plaintiff properly submitted the April 20, 2012, MRI to the Appeals Council, as it was generated after the ALJ's decision dated November 25, 2011.  As Plaintiff points

31

out, the MRI shows a "[*q*]*uestionable* partial tear of the anterior cruciate ligament" ("ACL") and "a small amount of edema" in the right knee. (Id. at 11) (emphasis added). According to Plaintiff, this evidence offers an explanation for her right knee pain during the period in question and, thus, it warranted review by the Appeals Council.

Setting aside the facts that the MRI in question was taken five months after the ALJ's decision and shows only a "questionable" partial tear of Plaintiff's ACL (id.), the record reflects that another MRI of Plaintiff's right knee was taken in June 2011, five months *before* the ALJ's decision, in response to Plaintiff's contemporaneous complaints of knee pain. That MRI indicated that Plaintiff's anterior cruciate ligament was "probably intact" and that her knee was normal. (Id. at 501, 505). This evidence makes it unlikely that the questionable, partial tear in Plaintiff's ACL, revealed in the later MRI, explains the origin of Plaintiff's knee pain during the period in question.

That being said, even assuming that the April 2012 MRI was probative of the period in question and did provide an explanation of the source of Plaintiff's right knee pain during the period in question, Plaintiff has failed to establish a reasonable possibility that the April 2012 MRI would have changed the administrative outcome had the Appeals Council

granted review.  Indeed, nothing in the MRI or anywhere else in the record suggests that Plaintiff's right knee pain is disabling.[14]

As the ALJ found, consultative physician, Dr. Stephen Robidoux, M.D., examined Plaintiff on September 13, 2010, and found no limitations resulting from the problems with her knee. (Id. at 473-74).  Dr. Robidoux noted that Plaintiff was "in no acute distress with normal unaided gait."  (Id. at 472).  Her physical examination revealed normal flexion and extension and full range of motion of both knees. (Id. at 473).  Dr. Robidoux concluded: "Ms. Terrell presents with the common problems most people face in the[ir] 40's.  Hypertension, osteoarthritis and obesity.  . . . She is able to do all the activities of daily living and on physical exam I find no limitations for people her age to sitting, standing, walking, lifting, carrying, handling objects, using hand and foot controls, climbing, listening, talking or travel." (Id.).

Likewise, Plaintiff's treating physician, Dr. Gerald Hodge, M.D., who treated Plaintiff from 2007 to 2011, noted no limitations related to her right knee.  (Id. at 358-60, 482-

---

[14] The ALJ did find Plaintiff's right knee pain to be a severe impairment and accounted for limitations caused by this impairment in his RFC assessment, finding that Plaintiff could only use her right lower extremity for pushing and pulling occasionally and could only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs.  (Tr. 27, 30).

507).   Thus,  even  if  the  Appeals  Council  had  granted  review, there  is  no  reasonable  possibility  that  the  April  2012  MRI  would have  changed  the  administrative  outcome.   Therefore,  Plaintiff's claim  is  without  merit.

**V.    Conclusion**

For  the  reasons  set  forth  herein,  and  upon  careful consideration  of  the  administrative  record  and  memoranda  of  the parties,  it  is  hereby  **ORDERED**  that  the  decision  of  the Commissioner  of  Social  Security  denying  Plaintiff's  claim  for supplemental  security  income  be  **AFFIRMED.**

**DONE**  this  **26th**  day  of  **January, 2015.**

                                        **/s/  SONJA  F.  BIVINS**
                                **UNITED  STATES  MAGISTRATE  JUDGE**